**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| PHILLIP RAMSEY §<br>　Plaintiff, §<br>§<br>v. §<br>§<br>INTERNATIONAL COMPUTER §<br>SYSTEMS, INC. (D/B/A FIRST §<br>COLLECTION SERVICES), §<br>§<br>and §<br>§<br>SOUTHWEST CREDIT SYSTEMS, §<br>L.P., §<br>　Defendants. § | Case No.: 1:16-cv-00745-TSB |

**DEFENDANT SOUTHWEST CREDIT SYSTEMS, L.P.'S RESPONSE TO
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Southwest Credit Systems, L.P., ("Southwest" herein), and files this Response to Plaintiff's Motion for Attorney's Fees and Costs, and will show onto this Court as follows:

**I.**

**INTRODUCTION**

Plaintiff filed suit against Southwest on July 9, 2016. Doc. 1. He alleged Southwest violated the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"). Southwest served upon Plaintiff a Rule 68 Offer of Judgment, which was accepted by Plaintiff and entered by the clerk of the Court on November 4, 2016. Docs. 14; 15. Plaintiff has filed his Motion of Plaintiff for Attorney's Fees and Costs (Doc. 18) and now Southwest files its Response to said motion.

An award of reasonable attorney's fees and costs is mandatory under the FDCPA once a violation of the statute has been found. 15 U.S.C. § 1692k(a)(3). In this case, Southwest served a Rule 68 Offer of Judgment on Plaintiff for $1,001.00, which Plaintiff accepted and requested the Court to determine Plaintiff's reasonable attorney's fees and costs. Thus, Plaintiff has filed his motion seeking $7,050.50 in fees and $400.00 in costs. Southwest hereby asks the Court to reduce this award by any unnecessary and improperly billed amounts, reduce the award for the results obtained and reduce the award of costs. *Miller v. Midpoint Resolution Group, LLC, et al.*, 608 F. Supp. 2d 389, 394 (W.D.N.Y 2009) (citing *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 404 (1st Cir. 2007) (holding that mandatory award of fees does not mean that a plaintiff is entitled to the amount of fees requested)).

II.

**ARGUMENT AND AUTHORITIES**

**A. Standard of calculation of a reasonable fee.**

The starting point in calculating a reasonable attorney's fee is to calculate the lodestar amount: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). Determination of the lodestar amount does not end the calculation. District courts have the authority to adjust the figure upwards or downward where warranted depending upon the facts of each case. *Id.* at 434.

The key factors to consider in making adjustments to the lodestar figure are the degree of success obtained on the claims individually and overall. *White v. Cadle Co.*, 1999 U.S. Dist. LEXIS 15760 at *4. If the plaintiff did not prevail on a claim that was "distinct in all respects" from claims upon which the plaintiff was successful, the hours

spent on the unsuccessful claim should be excluded from consideration in calculating the attorney's fees. *Id.* (citing *Hensley*, 461 U.S. at 440.

"After separating out hours and costs spent on wholly discrete claims which were unsuccessful, the district court then must determine if the plaintiff's overall success should be considered 'excellent' or merely 'limited or partial.'" *Id*. The Supreme Court has provided different standards for determining attorney's fees award depending upon whether plaintiff obtained excellent results or whether the plaintiff obtained partial or limited success. *Id*. (citing *Hensley*, 461 U.S. at 435-36. A plaintiff's attorney should recover a fully compensatory fee if he has obtained 'excellent' results, which the Sixth Circuit has reinforced, stating the "law does not require plaintiffs to recover 100% of what they sue for in order to be considered successful at trial." *Id*. at *4-5 (quoting *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 438 (6th Cir. 1999).

"The prevailing party may not be entitled to a fully compensatory attorney's fee if plaintiff obtained only 'partial or limited' success." *White*, 1999 U.S. Dist. LEXIS 15760 at *5-6 (quoting *Hensley*, 461 U.S. at 435. The Supreme Court fleshed out this statement in *Farrar v. Hobby* when it clarified that while "a plaintiff who wins nominal damages is a prevailing party" entitled to a fee award, "the 'technical' nature of a nominal damages award...does bear on the propriety of fees awarded." *Farrar v. Hobby*, 506 U.S. 103, 112-14, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).[1] "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id*. at 114 (citing *Hensley*, 461 U.S. at 436). In fact, this factor is considered before conducting the usual lodestar analysis. *Farrar*, 506 U.S. at 118.

---

[1] *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3rd Cir. 1991) (Section 1692k allows a "prevailing plaintiff" to recover attorney's fees and "in a typical case under the [FDCPA], the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.").

An amount less than the lodestar may be appropriate even where plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. *White*, 1999 U.S. Dist. LEXIS 15760 at *5-6. The district court, in its discretion, "may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success." *Id.* (citing *Hensley*, 461 U.S. at 436-37; *Fleming v. Ayers & Associates*, 948 F.2d 933, 1000 n.4 (6th Cir. 1991) (stating that "the district court need not go so far as to identify specific hours which should be eliminated in determining the reduced fee").

### B. Reasonable hourly fees.

The Court looks to the market value in the relevant legal community of the legal services performed to determine a reasonable attorney's fee. *Northcross v. Board of Educ. Of Memphis*, 611 F.2d 624, 638 (6th Cir. 1979). "In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Id.*

Plaintiff seeks an hourly rate of $295.00 for 23.9 hours of work. Doc. 18 at 6. Recently, Plaintiff's counsel sought a fee of $250.00 in the this Court before the Honorable Judge Susan J. Dlott, which was awarded. *Johnston v. Int'l Collection Bureau, Inc., et al*, 2015 U.S. Dist. LEXIS 58767 (S.D. Ohio May 5, 2015). Since Plaintiff has not provided any affidavits reflecting fees that similarly qualified attorneys have received in similar cases, and has presented no evidence that he himself has been awarded $295.00 an hour in any case. As such, Southwest proposes this Court calculate Plaintiff's counsel's fees at a rate of $250.00 per hour.

Plaintiff also offers the Laffey Matrix to demonstrate reasonable rates. However, this matrix is frequently used to determine presumptively reasonable fees in Washington, D.C., and, even when adjusted for different regions, has been held to be not "more helpful than the rates actually used by other courts or the rates of law firms." *Flitton v. Primary Residential Mortg., Inc.*, No. 2:03-cv-481-DAK, 2009 WL 1357206, at *2 (D. Utah May 7, 2009); *Freid v. National Action Fin. Servs., Inc.*, 2011 LEXIS 149668 (D. N.J. Dec. 29, 2011); *see also, e.g.*, *Fitzgerald v. City of Los Angeles*, No. CV03-01876 DDP, 2009 WL 960825, at *11 (C.D. Cal. Apr. 7, 2009). Again, Southwest proposes $250.00 an hour as a reasonable rate.

**C.    Reasonable hours expended.**

1. Standard on reasonableness of hours

The second step in determining reasonable attorney fees is ensuring the reasonableness of the hours expended. *Lee v. Javitch, Block and Rathbone, LLP*, 568 F. Supp.2d 870, 877 (W.D. Ohio 2008). "An applicant for attorney's fees is only entitled to an award for time reasonably expended." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). To determine the reasonable attorney's fee to be awarded, the court begins by determining the compensable hours from the attorneys' time records, including only hours reasonably spent. *Brown v. Phoenix Recovery Group*, Civil Action No. 3:09-CV-1319-D (N.D. Tex. Dec. 21, 2009) (*mem. op.*). "The court may reduce the number of compensable hours '[w]here the documentation of hours is inadequate.'" *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The court may also exclude any hours that it determines 'are excessive, redundant, or otherwise unnecessary.'" *Id.*

In calculating the number of hours reasonably spent by counsel for the party seeking fees, the court must ensure that counsel has exercised proper "billing judgment." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998); *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250; *Walker*, 99 F.3d at 769 ("billing judgment…refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours."). As for a reasonable number of hours, courts have decided that "[w]here the Plaintiff's hours include repetition, unnecessary expenditure of time, and the issues are not difficult, a court may properly reduce the number of compensable hours." *Memon v. Pinnacle Credit Servs. LLC*, No. 4:07-cv-03533 (S.D. Tex. 2009) (Mem. Op.); (citing *Hensley*, 461 U.S. at 434 n. 9.)

An analysis of whether counsel has exercised proper "billing judgment" requires a two-step inquiry. *Case*, 157 F.3d at 1250. First, the court examines whether the specific tasks are properly chargeable at all. *Id.* ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."). Second, after examining the specific tasks and whether they are properly chargeable, the court examines the hours expended on each task to determine if they are reasonable. *Id.* At all times, counsel for the party seeking fees has the burden to prove that their hours were reasonable. *e.g., Case*, 157 F.3d at 1259.

2. <u>Plaintiff's counsel fails to show billing judgment was used</u>

Plaintiff's counsel's affidavit does not provide any evidence billing judgment was used in this case. He gives the general statement that he has "reviewed them for accuracy." <u>Doc. 18-2</u> at 2. This should not suffice as evidence that billing judgment was

used. Furthermore, as detailed below, it is clear billing judgment was not implemented, justifying a downward reduction in Plaintiff's fee request.

3. <u>Plaintiff's counsel seeks recovery of excessive, redundant and unnecessary hours</u>

Various billing entries by Plaintiff's counsel are inadequate and are excessive, redundant, or otherwise unnecessary. Plaintiff's counsel's C.V. lists seven "significant federal legal matters" involving the FDCPA, FCRA and TCPA among the likely numerous amount of cases actually filed in federal court in his eleven years of practice. <u>Doc. 18-2</u> at 9-10. Despite this being a regular practice for Plaintiff's counsel, he spent up to 6.7 hours (entries 7/6/16 for 2 hours; 9/27/16 for 1.8 hours; 10/3/16 for 2.9 hours) in research and analysis of case law he seeks to recovery from Southwest. <u>Doc. 18-2</u> at 12-13. It is difficult to determine how much time was actually spent on the research as Plaintiff's counsel improperly block bills these entries with other tasks. *Id.* Plaintiff should not be allowed to recover fees for this excessive research and analysis from Southwest, warranting a downward reduction by this Court.

Besides fees devoted to research and case analysis, Plaintiff also seeks recovery of excessive time spent reviewing and analyzing "case documents." <u>Doc. 18-2</u> at 12-13. Plaintiff's counsel spent up to 5.3 hours (7/1/16 for 3.0 hours; 9/27/16 for 1.4 hours; 10/21/16 for 1.9 hours) doing such reviewing and analyzing case documents. The Complaint in this case does not paint a picture of a case with volumes of documents, but merely simple collection letters, a letter to the creditor, credit reports and a call log. *Id.*; <u>Doc. 1</u>. What would amount to likely ten to twenty pages of documents should not need up to 5.3 hours for an experienced attorney to review.

Last, Plaintiff spent an excessive 6.3 hours in "[p]reparation of complaint; review and analysis of case documents provided by client in preparation of same." Doc. 18-2 at 12 (7/7/16 entry). The Original Complaint in this case is roughly 17.5 pages of substance and contains a fair amount of generic recitation of the statutory provisions under which relief is sought. Doc. 1. It is hard to say spending nearly half an hour on each page of the Complaint is an efficient use of time to then seek from Southwest. As such, Southwest asks this Court to reduce the excessive, unnecessary and redundant time exhibited by Plaintiff's counsel and strike at least ten (10) hours of this excessive time.

3. Time expended on claims against International Computer Services are not Properly chargeable to southwest

In addition, while Plaintiff has also filed suit against a separate defendant, International Computer Systems, Inc. d/b/a First Collection Services ("ICS"), Plaintiff has done nothing or shown any segregation between research and fact-finding as it pertains to ICS versus Southwest. Plaintiff's counsel cannot recover for fees attributable to ICS. Without any showing of segregation of hours incurred for work towards claims against Southwest versus ICS, this Court cannot properly award fees to Plaintiff. Thus, this Court must reduce Plaintiff's fee award. Plaintiff's counsel's billing records contain entries amounting to 9.4 hours of time devoted to work related to both defendants in this case. Doc. 18-2 at 12-13 (7/1/16 (meeting with client for 3 hours); 7/6/16 (research to all claims for 2 hours); 7/7/16 (drafting complaint for 6.3 hours), 10/10/16 (prepare Rule 26(f) report for .4 hours); 10/11/2016 (Rule 26(f) conference with counsel for .2 hours); 10/25/16 (Rule 26(f) conference with court for .5, hours)). Southwest proposes the Court eliminate half of this time, 4.7 hours, if not already reduced for other reasons.

4. This Court's analysis is impeded by the above issues compounded by plaintiff's counsel's block billing

The Sixth Circuit Court of Appeals has consistently held that block billing is acceptable as long as "the description of the work performed is adequate." *Smith v. Serv. Master Corp.*, 592 Fed.Appx. 363, 371 (6th Cir. 2014); *Pittsburg & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007). "Attorneys who seek fees have an obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (quotation marks omitted).

Plaintiff block bills nearly all of his time entries. Specific entries that raise concern are the entries on 7/1 (3.0 hours), 7/6 (2.0 hours), 7/7 (6.3 hours), 9/27 (1.4 hours and 1.8 hours), 10/3 (2.9 hours) and 10/21 (1.9 hours). As Plaintiff block billed, it is unknown how much time was devoted to the excessive research, review and analysis of case law documents leaving this Court in a predicament of determining what may be reasonably awarded. More importantly, it is unknown how much time was dedicated to the claims against Co-Defendant ICS that are then improperly charged to Southwest. Due to the block billing, this Court should reduce Plaintiff's fee award.

**C.     The degree of Plaintiff's success goes to the reasonableness of the fee award.**

Normally, before awarding attorney's fees, the Court must first determine whether the plaintiff can fairly be considered a "prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The standard for determining whether a plaintiff can be considered a "prevailing party" for attorney's fees purposes is whether "they succeed on any significant issue in litigation which achieves some of the

benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In the present case, the parties have stipulated to Plaintiff being the "prevailing party" such that the Court need only determine the reasonableness and necessity of Plaintiff's attorney's fees and costs. But this does not conclude the Court's consideration of Plaintiff's "prevailing party" status.

In *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citing *Hensley*, 461 U.S. 424) the Supreme Court stated:

> [t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Texas State Teachers Ass'n v. Garland Indep. School Dist.*, *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). However, the Court did not stop with the black or white decision of whether a party is a prevailing party or not. Rather, the Court instructed "[w]here such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*[.]" *Id.* (citing *Hensley*, 461 U.S. 424).

The Supreme Court fleshed out this statement in *Farrar v. Hobby* when it clarified that while "a plaintiff who wins nominal damages is a prevailing party" entitled to a fee award, "the 'technical' nature of a nominal damages award…does bear on the propriety of fees awarded." *Farrar*, 506 U.S. at 112-114. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 114 (citing *Hensley*, 461 U.S. at 436). In fact, this factor is considered before conducting the usual lodestar analysis. *Farrar*, 506 U.S. at 118.

In her concurring opinion, Justice O'Connor explained that "*Garland* explicitly states that an enforceable judgment alone is not always enough…a technical victory may be so insignificant…as to be insufficient to support an award of attorney's fees" and "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical. *Farrar*, 506 U.S. at 117 & 121 [quotations and citations omitted]. "This difference…is not the only consideration," Justice O'Connor continued, another consideration "is the significance of the legal issue on which the plaintiff claims to have prevailed." *Id.* at 121. Justice O'Connor's final consideration is whether the plaintiff's success "accomplished some public goal other than occupying the time and energy of counsel, court, and client," such as the deterrence of future lawless conduct. *Id.* at 121-22 (citing *Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) (nuisance settlement that does not promote any public purpose cannot support award of attorney's fees); *Parker v. Matthews*, 411 F. Supp. 1059, 1064 (D.D.C. 1976), *aff'd sub nom., Parker v. Califano*, 561 F.2d 320 (D.C. Cir. 1977).[2]

Converting Justice O'Connor's concurrence into a three-part analysis for determining whether a victory is technical, the Seventh Circuit Court of Appeals declared that the first factor – the difference between the judgment recovered and the recovery sought – is the most important of the three. *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993). The second factor – the significance of the legal issue on which

---

[2] In *Parker v. Matthews*, 411 F. Supp. 1059, 1064 (D.D.C. 1976), the court considered the "catalyst" concept in which the plaintiff's suit was described as the catalyst which forced defendant to "voluntarily" comply with Title VII requirements. The court concluded that "the awarding of attorneys' fees must turn on the facts of the particular case" and "that a party who settles his or her Title VII lawsuit *may* be a "prevailing party" under the statute; and that whether to award attorneys' fees where there has been a settlement of a Title VII lawsuit must be determined by a close scrutiny of the totality of the circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue — discrimination." The "catalyst" theory was ultimately rejected in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), where the Supreme Court held that attorneys' fees may be awarded only if the plaintiff was "awarded some relief by the court."

the plaintiffs prevailed – "looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability" 7 F.3d at 110 (citing 506 U.S. at 121 (O'Connor, J., concurring)). O'Connor explained in *Farrar* that while the plaintiff "succeeded on a significant issue – liability…he cannot be said to have achieved a true victory… [but] a hollow one." *Farrar*, 506 U.S. at 121. This is because the plaintiff only recovered $1 from the least culpable defendant and nothing from the remaining five defendants. *Id*. Thus, the plaintiff "may have won a point, but the game, set, and match all went to the defendants." *Id*. But, "[o]f the three factors…the significance of the issue on which the party prevailed tends to be the least weighty in classifying the victory." *Cartwright*, 7 F.3d at 110.

Finally, the third factor – the public purpose served by the victory – principally relates to whether the victory vindicates important rights and deters future violations. *Cartwright*, 7 F.3d at 110. "The more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Id*. Justice O'Connor recognized in *Farrar* that the district court in that case had speculated that the plaintiff's judgment, if accompanied by a large fee award, might deter future lawless conduct, but did not identify the kind of conduct that would be prevented. *Farrar*, 506 U.S. at 122. Nor was the conduct to be deterred apparent from the verdict. *Id*. "Such a judgment," O'Connor concluded, "cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernable meaning." *Id*.

As mentioned above, Plaintiff argues that he obtained "excellent results" by accepting an Offer of Judgment for $1,001.00. Doc. 18 at 12. Excellent results, however, is misleading. While the FDCPA caps "additional damages" at $1,000, it initially permits

a plaintiff to recover any *actual damages* sustained as a result of the violation.[3] 15 U.S.C. § 1692k(a)(1) [emphasis added]. In this case, Plaintiff sought actual damages, statutory damages, treble damages, punitive damages, and an injunction against Southwest. Therefore, Plaintiff did not recover anywhere near a "maximum" allowed under the FDCPA, but only the maximum in statutory damages and $1.00 for actual damages. Again, when this amount is compared to the potential costs of litigating the matter, $1,001.00 becomes trivial.

Setting aside the FDCPA itself, Plaintiff also requested relief under the FCRA and TCPA, which both provide statutory damages in the event liability is determined. The FCRA has a similar structure as the FDCPA, entitling Plaintiff to up to not less than $100 and not more than $1,000.00 in actual damages for willful noncompliance and any actual damages sustained by the consumer for any negligent noncompliance. 15 U.S.C. § 1681n; § 1681o. The TCPA even provides relief of statutory damages of up to $500.00 per call and up to $1,500.00 per call made intentionally and knowingly. 47 U.S.C. § 227(b)(3). It appears through acceptance of the Offer of Judgment, Plaintiff waived any claim and more importantly any recovery, under these causes of action. It is fair to say that Plaintiff's "excellent" results amounted to miniscule success over one third of his legal claims, and less than that for the categories of damages sought.

Turning back to the FDCPA, in *Johnson v. Eaton*, the Fifth Circuit considered when a FDCPA plaintiff is required to be awarded attorney's fees. 80 F.3d 148, 150-52 (5th Cir. 1996). In that case, the plaintiff demonstrated that one of the defendants, White, had violated the FDCPA but failed to enforce any liability for actual or additional

---

[3] "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation." *Johnson v. Dep't of Treasury, I.R.S.*, 700 F.2d 971, 984 (5th Cir. 1983); *Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994).

damages against White. *See Eaton, supra,* 80 F.3d at 151. The Court concluded that the plaintiff, therefore, had not brought a "successful action to enforce the foregoing liability" under 15 U.S.C. § 1692k(a)(3) in order to receive attorney's fees and costs. *Id.* The Court reasoned that its reading of the statute did not frustrate the FDCPA's objectives, believing that requiring attorney's fees to be paid when the plaintiff fails to prove damages "rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." *Id.* Thus, the Court's "interpretation of the statute will require attorney's to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees." *Id.*

As a result of the plaintiff failing to prove any damages despite winning a declaration that White violated the law, the Court determined that she had not brought a successful action that warranted attorney's fees. *Id.* at 151-52. But the Court went one step further under the *Farrar* decision to find that, "even if Johnson's reading of the FDCPA was correct and she was entitled to receive a reasonable attorney's fee for her technical victory, *Farrar* makes it clear that a reasonable fee would be $0.00." *Id.* at 152.

Accordingly, if a plaintiff's failure to prove any damages, either actual or additional, mandates a reasonable fee of $0, then the failure to prove any actual damages, instead only seeking redress through additional or statutory damages, should, at the very least, warrant a reduction of the plaintiff's attorney fee request. Just as in *Carroll*, where the court concluded that it would reduce a fee award to account for the plaintiff's partial or limited success, so too should this Court reduce Plaintiff's request for fees due to his limited success. While settling for the maximum amount allowed in

additional damages, Plaintiff accepted only $1,001.00 as total compensation for damages, thereby only obtaining partial success under the statutes. To find conversely by simply comparing the amount sought in Plaintiff's petition to that ultimately obtained would encourage lawyers to sue for less and less actual or additional damages in order to lure defendants into settlement, only to claim that they were 100% "successful" in their fee petition and thereby warrant complete recovery of their attorney's fees. Such an allowance will most certainly lead, if it has not already, to the "cottage industry for the production of attorney's fees" that was not contemplated by the statute. *Murphy v. Equifax Check Services, Inc.*, 35 F. Supp. 2d at 204. A hefty downward adjustment to Plaintiff's fee request is warranted.

**E. The entire filing fee is not solely attributable to Southwest.**

Last, Plaintiff seeks recovery of the entire $400.00 filing fee in this case. However, as there are two defendants in this case, it is unfair to allow Plaintiff to recover the entire filing free solely from Southwest. As such, Southwest requests any costs awarded be reduced to $200.00.

## III.

## CONCLUSION

For the reasons detailed herein, Southwest requests this Court substantially reduce Plaintiff's fee request, apply an hourly rate of $250.00 per hour, and reduce the costs awarded to $200.00. Plaintiff's counsel's billing records contain multiple examples of excessive, redundant and unnecessary tasks given the nature and simplicity of the case. The billing records further contain block billing which impede this Court's analysis in determining the reasonableness of the work. In addition, it is undeterminable of what time was devoted solely to claims against Southwest or in

conjunction with the claims against ICS. Last, and most importantly, it is clear Plaintiff's acceptance of Southwest's Offer of Judgment is not an example of "excellent" results. Maximum liability under just statutory damages would have been $2,500.00 under the FDCPA, FCRA and one call under the TCPA.

Respectfully submitted,

/s/Zachary P. Elliott
Boyd W. Gentry (0071057)
Zachary P. Elliott (0090057)
Law Office of Boyd W. Gentry, LLC
4031 Colonel Glenn Highway
Beavercreek, Ohio 45431
Tel. 937.839.2881
Fax 800.839.5843
bgentry@boydgentrylaw.com
zelliott@boydgentrylaw.com
*Trial Attorneys for Defendant Southwest Credit Systems, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served by this court's ECF system on December 9, 2016.

/s/Zachary P. Elliott
Zachary P. Elliott (0090057)