UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHILLIP RAMSEY, | : | Case No. 1:16-cv-745 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| INTERNATIONAL COMPUTER | : | |
| SYSTEMS, INC., *et al*., | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR FEES AND COSTS (Doc. 18)**

This civil action is before the Court on Plaintiff's motion for fees and costs (Doc. 18) and the parties' responsive memoranda (Docs. 20, 21).

## I. BACKGROUND FACTS

Plaintiff was a customer of Windstream Communication, a provider of telephone, internet, and television services. (Doc. 1 at ¶ 10). As part of his bundle package service with Windstream, Plaintiff subscribed to DISH satellite television. (*Id.*) During the course of early to the middle of 2014, Plaintiff's father, who suffers from dementia and is currently under Plaintiff's court-ordered guardianship, purchased certain on-demand movies on various occasions without Plaintiff's authorization. (*Id.* at ¶ 11). After receiving invoices from Windstream showing these unauthorized purchases, Plaintiff called Windstream's customer service representatives to dispute the charges and have them removed from his bill. After several conversations with Windstream representatives, Windstream promised and agreed to remove these unauthorized charges

from his Windstream account.  (*Id*.)  Notwithstanding the foregoing promises and agreements, Windstream's collection department and its debt collection agencies, such as Defendant Southwest Credit Systems, began debt collection efforts against Plaintiff.  (*Id*.)

In response to these collection activities, Plaintiff had repeated telephone calls with Windstream and its debt collectors in which he disputed the debt and instructed Windstream to immediately cease the collection calls he was receiving.  (Doc. 1 at ¶ 15). Plaintiff also sent a letter dated November 16, 2014 to Windstream disputing the purported debt and expressly instructing Windstream "and any affiliated collection agencies to cease all communications with me in regards to the Windstream account associated with Phillip Ramsey . . . ."  (*Id.* at ¶ 16).

In or around the fall of 2015, Southwest also began collection efforts against Plaintiff on behalf of Windstream.  (Doc. 1 at ¶ 23).  These collection efforts included Southwest sending collection letters to Plaintiff and making calls to Plaintiff's cellular telephone (often several times a day) using an automatic telephone dialing system and/or an artificial or prerecorded voice.  (*Id*.)  In response to Southwest's collection efforts, Plaintiff sent a letter dated October 14, 2015 to Southwest disputing the purported debt and expressly "requesting that your company and Windstream cease all communication with me regarding this debt. . . . I am asking you to cease all communication with me in regards to this debt.  I expect you to comply with the above named statute.  Please be aware that communication is considered to be telephone, mail, email, and fax."  (*Id.* at ¶ 24, Ex. I). Plaintiff also spoke via telephone with Southwest's representatives and

2

expressly instructed Southwest to immediately stop its collection calls and activities. (*Id.*)

Nevertheless, Southwest continued to make numerous collection calls to Plaintiff's cellular telephone and, in early 2016, Southwest started to report incorrect and false information regarding the status of Plaintiff's Windstream account to the three major credit bureaus, Experian, TransUnion, and Equifax. (Doc. 1 at ¶¶ 26-27). Plaintiff initiated this lawsuit against Southwest to stop these unlawful collection activities.

After nearly four months of litigation, Plaintiff resolved all of his claims against Southwest by accepting a Rule 68 offer of judgment, which was entered by the Clerk on November 4, 2016. (Doc. 15). As part of that judgment, Southwest was ordered to "pay Plaintiff's actual costs and reasonable attorney fees; said fees and costs are to be in an amount as agreed to between counsel for the parties, or if they are unable to agree, as decided by the Court upon motion under federal law interpreting the Fair Debt Collection Practices Act." (*Id.*)

Accordingly, Plaintiff moves for fees and costs associated with his claims against Southwest. Plaintiff seeks $7,050.50 in attorney's fees and $400 in costs, for a total award of $7,450.50.

## II. STANDARD OF REVIEW

A court has the discretion to award attorneys' fees based on its inherent powers. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). *See also* 28 U.S.C. § 1927.

The starting point for determining the amount of reasonable attorney's fees is the "lodestar" amount. *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, No. 3:10cv377, 2011 U.S. Dist. LEXIS 111648, at *4 (S.D. Ohio Sept. 29, 2011) (citing *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008)). The "lodestar" amount is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. (*Id.*) The lodestar amount is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### III. ANALYSIS

The Fair Debt Collection Practices Act ("FDCPA") mandates the award of "a reasonable attorney's fee" to a prevailing party. 15 U.S.C. § 1692k(a)(3); *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997). "The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). *See also Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995) (noting that the general public has an interest in the vindication of statutory rights and that Congress's specific intent under the FDCPA was to facilitate a plaintiff's ability to pursue an action where the economic burden of costs and fees would otherwise preclude enforcement; finding that "[u]nlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms.").

A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). *See also City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("[R]easonable attorney's fees…are not conditioned upon and need not be proportionate to an award of money damages."). In fact, courts routinely award reasonable attorneys' fees to a prevailing party in FDCPA cases that greatly exceed damage awards. *See, e.g., Johnston v. Int'l Collection Bureau, Inc.*, Case No. 1:14cv659, 2015 U.S. Dist. LEXIS 58767, at *8 (S.D. Ohio May 5, 2015) (Dlott, J.) (awarding $9,475 in attorney's fees under FDCPA based on $500 in damages pursuant to Rule 68 offer of judgment).

A. **Attorney's Fees**

Plaintiff seeks a lodestar of $7,050.50, based on a $295 hourly rate and 23.9 hours of billable work. In support of the motion, Plaintiff's counsel includes an affidavit and invoice detailing the time entries and billing total of his work. (Doc. 18-2). Defendant Southwest opposes the lodestar advanced by Plaintiff, arguing that both the rate and the hours are unreasonable.

1. *Hourly rate*

A reasonable hourly rate is usually the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. *Geier*, 372 F.3d at 791. "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines,

5

and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 426 F. App'x 496, 498-99 (6th Cir. 2011).

The Laffey Matrix outlines reasonable rates in the Washington D.C. area for the years 2014-2015. To account for the difference in the cost of living standard between Washington D.C. and an applicable geographic area, federal courts often use the federally compiled locality pay differentials to adjust the rates of the Laffey Matrix to reflect the cost of living standard. *See, e.g., In re Chiron Corp. Sec. Litig.*, No. C-04-4293, 2007 U.S. Dist. LEXIS 91140, at *19-20 (N.D. Cal. Nov. 30, 2007). The locality pay differentials are 24.22% for the District of Columbia and 18.55% for Cincinnati, Ohio. Thus, an adjusted Laffey Matrix indicates that the reasonable billable rates for the years 2014-2015 for attorneys in Cincinnati, Ohio who have between 11-19 years of experience is $354 per hour. Here, the $295 hourly rate requested by counsel is significantly lower than the $354 rate outlined in the Adjusted Laffey Matrix. *See also Johnston*, 2015 U.S. Dist. LEXIS 58767 at 3-4 (Judge Dlott determined that Mr. Sadlowski's reasonable hourly rate was $289 for fiscal year 2015).[1]

Accordingly, the Court finds that Mr. Sadlowski's hourly rate is fair and reasonable. Mr. Sadlowski has eleven years of experience litigating consumer claims in federal court. (Doc. 18-2). The requested rate of $295 per hour falls within the prevailing rates for an attorney in this Court with commensurate skills and experience.

---

[1] After applying a 4% annual cost-of-living allowance to Judge Dlott's $289 figure, counsel's rate would be $301 for fiscal year 2016, which is nearly identical to the $295 hourly rate requested in this case.

6

### *2. Hours expended*

An attorney seeking fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended" on the case. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

Plaintiff's counsel provided a detailed affidavit with six separate exhibits outlining the exact nature, purpose, and scope of the work performed in this case. (Doc. 18-2 at ¶¶ 3-4, 6-13, Exs. B-G). Defendant argues that certain hours of work were "excessive, redundant and unnecessary" and should be reduced by the Court because they exceed the amount of time necessary to accomplish the described tasks. Specifically, Defendant identifies the following work as unreasonable:

> 1. "6.3 hours in "[p]reparation of complaint; review and analysis of case documents provided by client in preparation of same."
>
> 2. "6.7 hours (entries 7/6/16 for 2 hours; 9/27/16 for 1/8 hours; 10/31/16 for 2.9 hours) in research and analysis of case law he seeks to recover from Southwest."
>
> 3. "5.3 hours (7/1/16 for 3.0 hours, 9/27/16 for 1.4 hours; 10/21/16 for 1.9 hours) doing such reviewing and analyzing case documents."

(Doc. 20 at 7-8).

Counsel prepared a 19 page, 64 paragraph complaint with 12 exhibits outlining in specific detail Defendant's actions, the legal bases for each of Defendant's violations of federal law (including citing relevant law supporting Plaintiff's claims), and the exact nature of claims asserted against Defendant. (Doc. 1). The time spent preparing the complaint was reasonable based on numerous documents, correspondence, invoices, and

7

phone logs involved.  Furthermore, this Court has no reason to believe that it was unreasonable for counsel to spend 6.7 hours researching case law and statutory law to prepare the complaint and respond to defense counsel's legal and factual assertions made during the course of settlement discussions.  (Doc. 18-2 at ¶¶ 3, 9-10, Ex. B).  Moreover, it seems reasonable that counsel expended 5.3 hours over the course of the litigation reviewing and analyzing case documents for these same purposes.  (*Id.*)  Moreover, as a direct result of Plaintiff's counsel's efforts, defense counsel went from demanding that the case be dismissed, to serving a Rule 68 offer of judgment.

Defendant also objects to the inclusion of time entries for work that it believes relates to claims against co-Defendant International Computer Services, Inc. ("ICS").  As stated in Plaintiff's counsel's affidavit, all work related to ICS was removed from counsel's billing summary to the extent possible.  (Doc. 18-2 at ¶ 4, Ex. B).  To the extent work applied to both defendants, that work could not be separately divided and would have been performed even if there had not been a co-defendant in this case (*e.g.*, preparing Rule 26(f) report, Rule 26(f) conference, etc.).

Finally, Defendant asserts counsel used "block billing" and requests that the Court reduce Plaintiff's fee award.  However, Plaintiff's counsel submitted a detailed billing summary specifying the time spent by counsel on various issues in this matter.  (Doc. 18-2 at ¶¶ 3-4, 6-13; Exs. B-G).  Plaintiff's counsel did not use the type of generic, non-descriptive "block billing" that warrants any fee reduction.  *Pittsburg & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007)

("counsel's detailed descriptions of his activities, although not further described by time spent on each individual activity, is sufficient to assess whether the cost of the service is reasonably related to the quality or extent of service…").

Accordingly, the Court finds that the 23.9 hours of billable work Plaintiff's counsel performed in this case was reasonable.

### 3. *Adjustment of lodestar*

Once the lodestar rate is determined, the Court then considers whether to modify the award in light of "relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). Specifically, a district court has discretion to consider the following factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at n. 8.

Considering these factors, the Court finds that a downward adjustment of the lodestar is unwarranted. There is a strong presumption that the lodestar produces a reasonable fee and after consideration of Plaintiff's overall success in this action, the Court declines to depart from the lodestar. Importantly, the degree of success should not

9

be based on the amount of recovery. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("[R]easonable attorney's fees … are not conditioned upon and need not be proportionate to an award of money damages.").

The Court finds that counsel achieved significant success in this case. The Rule 68 offer of and acceptance of judgment was not limited to specific claims, but essentially indicates that Plaintiff prevailed on all claims. Furthermore, Defendant Southwest was apprised of its legal obligations as a debt collector under the federal law and brought into compliance with those legal obligations. As a result, the rights of Plaintiff and the general public under federal consumer statutes were protected. The Court, the parties, and the general public benefit from this matter being resolved at an early date. Accordingly, the Court declines to adjust the lodestar in this case.

### B. Costs

Finally, Plaintiff has requested $400 in out-of-pocket costs for filing fees under 15 U.S.C. Section 1692k(a) and 28 U.S.C. Section 1920. Defendant requests that the Court reduce the $400 cost for filing fees by fifty percent. However, Defendant fails to cite any case law to support this proposition.

The November 4, 2016 Entry of Judgment required Defendant to pay costs incurred by Plaintiff in this lawsuit. (Doc. 15). Defendant could have limited those costs to $200 in its Rule 68 offer of judgment, but failed to do so. Plaintiff incurred the $400 filing fee as a cost in pursuing his claims against Defendant and would have incurred this

cost regardless of the number of defendants in this action.  Accordingly, Plaintiff is entitled to the full $400 fee.

## IV.  CONCLUSION

Accordingly, for these reasons, Plaintiff's motion for fees and costs (Doc. 18) is **GRANTED**.  The Court awards Plaintiff $7,050.50 in attorneys' fees and $400.00 in costs against Defendant Southwest Credit Systems, L.P., for a total of $7,450.50.

The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

Date: __1/3/17__                                        _____Timothy S. Black_____
                                                                        Timothy S. Black
                                                                        United States District Judge